LENA SCHMIDT, Appellee, *vs.* THE CHICAGO CITY RAILWAY COMPANY, Appellant.

*Opinion filed April 23, 1909.*

1. EVIDENCE—*what is not competent as tending to prove existence of rule.* Where two street railway companies are sued for injuries received by the plaintiff in a collision between their cars, one defendant is entitled to prove, by any legitimate evidence, that there was a rule in existence giving its cars the right of way over cars of the other defendant; but an offer to prove there had once been such a rule is properly refused, where there is no proof, or offered proof, that it was in existence at the time of the collision.

2. SAME—*error in rulings as between defendants does not concern plaintiff.* In an action against two street railway companies for injuries received by the plaintiff in a collision between their respective cars the liability is not joint but several, and if the evidence against the defendant found guilty is sufficient to sustain the judgment, errors in rulings of the court as between the defendants, with which errors the plaintiff had nothing to do, are not ground for reversal.

3. SAME—*the fact that witnesses are doctors does not preclude their giving testimony as lay witnesses.* The mere fact that witnesses for the plaintiff in a personal injury case are doctors does not disqualify them from testifying to matters which any lay witness might have observed and testified to, and their testimony that plaintiff limped when she walked and that the sole of the shoe on the foot she dragged was worn at the toe is not improper.

4. SAME—*when testimony cannot be said to be based upon purely subjective manifestation.* Testimony by a physician that pressure on a certain place in the plaintiff's spine caused involun-

tary contraction of the muscles of the right side and hip, and that the pulse beat went from 80 to 120 on such pressure, cannot be rejected upon the ground that the manifestation was voluntary, even though the witness testified that anyone could simulate the motion of the foot and flinch voluntarily.

5. VERDICT—*finding of jury is not a verdict until accepted and entered of record.* Where the jury, in an action for personal injuries against two street railway companies, returns a verdict finding one defendant guilty but making no finding as to the other, the court may properly instruct them, in writing, to retire and complete their verdict by finding the other defendant guilty or not guilty, since the liability is not joint, and if the defendant found guilty thinks the jury may have changed their views since the first finding it may poll the jury as to the verdict finally returned.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

SAMUEL S. PAGE, and WATSON J. FERRY, (JOHN R. HARRINGTON, of counsel,) for appellant.

KRUSE & PEDEN, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On June 22, 1902, at about ten o'clock at night, the appellee was a passenger on a car of appellant going south on Clark street, in the city of Chicago. The appellant had double tracks in that street, and the cars going north ran over the east track and those going south over the west track. Twelfth street crossed Clark street at right angles, and the Union Traction Company had double tracks in Twelfth street intersecting those of appellant at that crossing. Clark street approached Twelfth from the north on a grade rising two feet in one hundred for about seven hundred and fifty feet, and the tracks of the Union Traction Company approached the crossing from the east on a

slightly descending grade. When the car on which appellee was riding was half a block or more north of Twelfth street, a small, open summer car twenty-four feet long, which had once been used as a horse car, coming from the east on Twelfth street, stopped east of the cross-walk on the east side of Clark street. After making that stop the conductor gave the signal to go ahead, and the car moved slowly over the crossing at perhaps four or five miles an hour. Appellant's car was a very large and heavy car, forty-eight feet long, and heavily loaded with passengers, and was coming up the grade at a much higher rate of speed,—probably from eight to ten miles an hour. It did not stop, but reached the crossing when the other car was partly over it, striking the other car at or forward of the middle and throwing it off the track. When it was apparent there would be a collision the motorman on appellant's car set the air brakes but was unable to stop the car and only slackened the speed. The appellee was injured in the collision and brought suit in the circuit court of Cook county against both of the railway companies. She had judgment against appellant alone for $2625, from which appellant appealed to the Appellate Court for the First District. The branch of that court affirmed the judgment, and appellant prosecuted a further appeal to this court, asking a reversal on the following grounds: "(1) For errors in the admission of improper evidence; (2) there was a mistrial by reason of the fact that the verdict of the jury was a nullity."

The plaintiff proved the facts above stated which made a *prima facie* case against the defendants. There was no effort to controvert the right of the plaintiff to judgment against one or the other of the defendants, and, aside from testimony relevant to the question of the amount of damages, the defense developed into a contest between the two defendants as to which one was guilty of the negligence which caused the collision, each one endeavoring to throw

the blame upon the other.   The car of the Union Traction
Company arrived at the intersection of the streets first and
started over the crossing while the appellant's car was a
considerable distance from it, and the Union Traction Com-
pany produced fifteen witnesses, mostly motormen and con-
ductors, who testified that there was no rule, instruction or
custom which gave to appellant any preference or required
a car of the Union Traction Company to stop and give
precedence to a car of appellant, and that the uniform cus-
tom with reference to the right of a car to pass over the
crossing was that the car which got there first had the right
of way.   They testified that the universal custom was that
the car which first arrived at the street intersection had the
right of way, and each motorman determined for himself
whether it was safe to pass over the crossing, and if cars
came there at about the same time it was customary for the
motormen to signal each other, and for one to indicate, by
nodding his head, that the other was to proceed.   The ap-
pellant contended that there was a rule and custom by which
the cars of the Union Traction Company stopped on reach-
ing Clark street, and if any car of the appellant was within
one hundred and fifty or two hundred feet, the Twelfth
street car would wait until the Clark street car had passed
over the crossing.   Appellant offered testimony that its car
was about one hundred and fifty feet north of Twelfth
street when the car of the Union Traction Company started
over the crossing; that it was necessary to run at a good
rate of speed up the grade and difficult to stop and start
again, and that when the car on the Twelfth street line
started forward, appellant's motorman set the brakes on
his car but was unable to stop it before the collision.   Ap-
pellant examined twenty-one witnesses who testified to the
existence of the rule and custom contended for, and one
witness who worked for the Union Traction Company from
July, 1885, to either 1901 or 1902, testified that while he
was running out of the Lawndale car barn, from which the

Twelfth street cars ran, he saw bulletins posted there with reference to which line of cars had the right of way at that intersection. Appellant then offered to show by the witness that there was a bulletin posted up in that barn to the effect that the Clark street cars had the right of way over the Twelfth street cars at the intersection, and that such bulletin, after being up a few weeks or a month or two, would be taken down and disappeared, and that such was the case with every bulletin. The court sustained an objection of the Union Traction Company to the proposal, and in this did not err. The witness said that he was discharged by the Union Traction Company in 1901 or 1902, and may not even have been an employee of the company at the time of the collision. Neither his testimony nor the offer included proof that the bulletin was in effect at the time of the accident. For aught that appears it might have been posted seven years before and torn down within a few weeks. It was proper to offer any evidence tending to prove that there was a rule as contended for by appellant, and all legitimate evidence on that subject was admitted. A large number of witnesses on each side testified on that subject, and a witness for the Union Traction Company, who was barn foreman at the Lawndale barn from 1900 up to March, 1903, covering the period of the accident, who posted bulletins, orders and notices in the barn, testified that he never posted or saw in the barn, or around there, any bulletin dealing with the question of the right of way at the crossing.

Appellant examined witnesses as to the rule and custom, and the court permitted its co-defendant, the Union Traction Company, to examine them with respect to how long it took a car to run two hundred feet; the rate of speed of appellant's car; within what distance it could be stopped, and other matters of that kind. The witnesses had not been examined by appellant on such subjects or touching any matter except the rule and custom, and it is in-

sisted that the judgment in favor of the plaintiff must be reversed because of what one of the defendants did. If the examination were regarded as cross-examination by the plaintiff it would be error, for the reason that a cross-examination must be limited to facts elicited by the examination in chief. (*Bell* v. *Prewitt,* 62 Ill. 361; *City of East Dubuque* v. *Burhyte,* 173 id. 553; *Anheuser-Busch Brewing Ass.* v. *Hutmacher,* 127 id. 652.) The plaintiff made no attempt to cross-examine the witnesses and took no part in the strife between the two defendants to fix the blame on each other. The witnesses were examined by both defendants as a part of the defense, and the fact that one party was improperly permitted to introduce testimony hostile to the other would not justify a reversal as against the innocent plaintiff. The Union Traction Company was afterward permitted to introduce testimony contradicting the testimony drawn out on its own examination of appellant's witnesses, but the successive examinations were for the defense and by parties on the same side. The Union Traction Company was found not guilty, and the plaintiff was not required to, and did not, appeal from the judgment in favor of that defendant. The liability was not joint but several, and if the evidence against the appellant sustains the judgment, the question whether there was error in the rulings of the court between the two defendants does not concern the plaintiff.

The next complaint is, that in the examination of the plaintiff's witness Dr. Abel, who attended her at the time of the injury and afterward, he was permitted to testify that during the first four months after the injury he observed the plaintiff walking with a limp, and Dr. Murdoch, who examined her shortly before the trial and not for the purpose of treatment, was permitted to testify that when she visited his office he noticed when she came in that she had a peculiar walk,—dragged her right foot,—and the toe of the right shoe was worn. These witnesses were doc-

tors, but that fact did not disqualify them from testifying to matters which any lay witness might have observed and testified to. It was proper to prove that before the injury the plaintiff was a strong, healthy woman without physical defect and that after the injury she walked with a limp, and a great many witnesses testified, without objection, to the limping. The testimony of the doctors as to the limp, and that of Dr. Murdoch as to the wearing of the sole of the shoe at the toe, which showed the dragging was habitual, was of the same character, and the testimony was not the opinions of experts.

Dr. Murdoch also testified that on his examination a pressure on the spine at the fourth or fifth dorsal vertebra produced involuntary contraction of the muscles of the right side of the hip and thigh, and it is urged that this evidence was incompetent for the reason that the manifestation was purely subjective and within plaintiff's control. It would not have been proper for the doctor to give to the jury any statement made by plaintiff or any physical manifestation by her of the same nature as a statement. (*West Chicago Street Railroad Co.* v. *Carr,* 170 Ill. 478; *Greinke* v. *Chicago City Railway Co.* 234 id. 564.) The doctor said that anybody could simulate the motions with the foot and when pressed on the back might flinch voluntarily, but he said that on the pressure the pulse beat went up from about 80 to 120 and the contraction was involuntary. The court could not say that the contraction was voluntary, and there was the usual opportunity for cross-examination on the subject, from which the jury might determine the question.

In pursuance of an agreement of the attorneys and an order of court the jury made and signed a verdict and separated. They re-assembled at the next session of the court, and when the envelope was opened it contained a verdict finding appellant guilty and assessing the plaintiff's damages, but there was no finding as to the other defendant.

The attorney for appellant objected to receiving the paper as a verdict, and the court instructed the jury, in writing, to return to the jury room and determine from the evidence whether the Chicago Union Traction Company was guilty or not and to return a verdict accordingly. The jury retired and returned a verdict finding the Chicago Union Traction Company not guilty. The attorney for appellant objected to receiving the additional verdict, but the objection was overruled. The argument is, that the action being .for a joint wrong the first verdict was no verdict, and being defective both in form and substance, the court should have directed the jury to retire and reconsider the entire verdict as to both defendants. It is said that the jury might have changed their minds after returning the sealed verdict and therefore might have found the appellant not guilty. The finding of a jury does not become a verdict until it is received and accepted by the court and entered of record. It is within the control of the jury and may be changed by them until they are discharged. (*Martin* v. *Morelock,* 32 Ill. 485.) It was not error for the court to direct the jury to retire and complete their verdict by finding as to the other defendant. (*Consolidated Coal Co.* v. *Maehl,* 130 Ill. 551.) If the attorney for appellant supposed there might have been a change in the views of the jury as to it, there was both right and opportunity to have the jury polled for the purpose of ascertaining whether the paper was still their verdict. The liability was not joint.

Appellant's counsel mention the refusal of an instruction as erroneous although it is not included in the grounds stated for reversal. It would be proper to disregard the point, but the court did not err in refusing it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*