25 P.(2d) 818

## PUEBLO DE SANDIA v. ATCHISON, T. & S. F. RY. CO.

### No. 3813.

Supreme Court of New Mexico.

Sept. 29, 1933.

Dudley Cornell, of Albuquerque, for appellant.

Reid & Iden, of Albuquerque, for appellee.

ZINN, Justice.

This suit was brought by the Pueblo De Sandia, a corporation, an Indian pueblo, against the Atchison, Topeka & Santa Fé Railway Company, claiming damages in the sum of $1976 on account of injury to growing crops from flood waters during the months of June and July, 1929, on six small tracts of land belonging to plaintiff. For convenience, the plaintiff will hereinafter be referred to as the pueblo and the defendant as the railway company.

Pursuant to an agreement entered into between the pueblo and the railway company on May 15, 1919, the waters of several natural water courses or arroyos, on lands belonging to the pueblo, were by the railway company converged and diverted into one channel for the purpose of carrying off the surface water from the mountains and mesa land to the east of the pueblo village during periods of rainfall. The railway company also constructed a water box or flume, one hundred feet in length, across the channel for the purpose of carrying the waters of the Indian irrigation ditch across the channel so constructed. This wooden box disappeared after having been used about two years, and the Indians constructed a dirt crossing to carry the water, which dirt crossing frequently washed out.

The pueblo alleged that, after completion of such works in 1919, the railway company negligently and carelessly allowed same to fall into disrepair and thus allowed flood waters from the arroyo to flood the pueblo lands, and that the channel was allowed to fill up with sand and gravel, causing the water to overflow the lands, to plaintiffs' damage.

The railway company entered a general denial as to the allegations of negligence and denied liability for the reason that, if there were any obstruction to the water flowing down the arroyo or channel which caused the damage complained of, it was the state highway and not the works of the railway company, and denied that it was under any duty to keep the dikes, channel, and the irrigation box or flume in repair.

The pueblo took the position that the agreement of May 15, 1919, is void and of no validity or effect because it did not receive the approval of the Secretary of the Interior of the

United States of America, and, further, that the agreement did not purport or allow the railway company to permit the works to fall into disrepair.

There is no issue on the evidence offered, though alleged, that the original construction was negligent.

The case was tried before the court without a jury, and at the close both plaintiff and defendant submitted requested findings of fact and conclusions of law; some of each being adopted by the trial court and others rejected.

The trial court prepared an opinion, which in substance held, and which is supported by substantial evidence, that the acts of the railway company in building the dikes and in constructing the works were done by agreement of the parties and in accordance with the specifications and terms of their written contract, and that no liability can be predicated upon the mere construction of the works, and that there can be no recovery for flooding the lands west of the railroad track beyond the point where defendant's works stopped and where the state highway was subsequently built. This disposition was based on the fact that the pueblo failed in any way to show that the damage to these four tracts was caused by the construction of the dikes and channel, but on the contrary was the result of the construction of the state highway. This disposed of the claims for damages as to the Francisco Lariano, Ignacio Baca, Andres Lariano, and Candelario Ortiz tracts, being four of the six tracts damaged.

The lower court denied claim for damages to the other two tracts of land, being the Juan Avila and Nascario Jiron tracts, which were damaged as a result of the water from the arroyo flowing and backing down upon the two tracts of land mentioned through the dirt crossing which was constructed in lieu of the original wooden culvert built by the railway company. The court found and the testimony shows that the wooden culvert became silted up and finally disappeared after having been in use about two years, and that for about eight years thereafter the Indians maintained the dirt crossing which frequently became washed out, and the court concluded that the defendant was not guilty of neglecting to repair or maintain the wooden ditch crossing and therefore as to these two tracts the pueblo must likewise fail.

From the judgment of the trial court the pueblo has taken this appeal.

The issues have been narrowed by brief and supplemental brief to two propositions.

First, the pueblo contends that the trial court failed to follow and apply the following proposition of law to the case: "Irrespective of any question of negligence or malice a riparian owner who, by his wilful act, diverts the waters of a natural stream from its accustomed channel, and causes them to flow upon the lands of his neighbor, is liable for the resulting damage." 27 R. C. L. 1096.

The pueblo does not question the court's findings as not being supported by substantial evidence, but contends that the conclusions

made by the court are not in accord with the theory of law which the pueblo contends for, as above stated. It is apparently the theory of counsel for the pueblo that, no matter where, when, or how, one who diverts the waters of a natural stream from its accus- tomed channel, and damage results from such diversion, that the party responsible for such diversion is conclusively responsible for any resulting damage. With such theory we can- not agree, and the trial court did not err in failing to follow and apply such theory to the case at bar.

We do not question the general proposition of law contended for by appellant, but it can- not be seriously contended that the interfer- ence with or diversion of the waters was "by the wilful act" of the railway company.

The trial court found and the evidence shows that all structures built by the railway company on the pueblo lands were under authority of the agreement of May 15, 1919, and that such structures were built in accord- ance with the contract, and that the struc- tures were, at the time of construction, suf- ficient in height, strength, and capacity, and confined the waters in the channel, as intend- ed, except at the point where the Indians themselves cut the dike and built their Indian irrigation ditch through the same, which caused the damage to the Juan Avila and Nascario Jiron tracts.

The structures which diverted the water, being built by the railway company on the pueblo lands, were built in accordance with the agreement and without negligence, and such diversion is not a willful or tortious di- version, but with the consent of the Indians, and it would seem that the Indians are as ef- fectively estopped and have no more legal right to ask damages against the railway company for that construction than if they had employed the railway company as their agent to do this work for them on their lands.

It cannot be logically contended that the diverting of a water course is by "wilful act" when it is done under such circumstanc- es as shown in this case, by the entire and complete consent of the landowner.

We have read the cases cited by counsel for the pueblo in support of its theory, in Will- son v. Boise City, 20 Idaho, 133, 117 P. 115, 36 L. R. A. (N. S.) 1158, and note, and in Gar- rett v. Beers, 97 Kan. 255, 155 P. 2, L. R. A. 1916F, 1289, and note page 1291, and the oth- er cases cited, and find them not in point. It appears in the cases reviewed that the struc- tures which diverted or interfered with the natural flow of water and caused the damage complained of were in some cases described as "unlawful," in others as "wilful," and in others as having been built by "trespassers" on the land or some other like situation, but none covers a state of facts where the one claiming damages entered into a contract au- thorizing the diversion of the water. It seems to us that it is a self-evident proposition that the construction of the dikes and channel, and the diversion of the water in this case on the land of the pueblo, with the landowner's con- sent, are directly inconsistent with "wilful act," as construed and intended in the state-

ment of law contended for by appellant and the authorities supporting the theory.

The second issue presented by the supplemental brief of the pueblo is whether the contract of May 15, 1919, between the pueblo and the railway company was the grant of such an interest in the land of the Indians as required the approval of the Secretary of the Interior of the United States to be valid and binding.

We cannot see any necessity for deciding this issue, in view of our decision of the first question.

Both parties, the pueblo and the railway company, entered into the agreement of May 15, 1919, in good faith, and the railway company constructed the dikes, channel, culvert, and bridge in accordance with the agreement, and did not divert the waters from their natural flow willfully or in a tortious manner, contrary to the desires of the pueblo, and the evidence shows that it benefited the pueblo by diverting the water and preventing the village itself from becoming flooded during the heavy rain seasons, and under such circumstances we cannot see where the approval or disapproval of the Secretary of the Interior to the agreement between the pueblo and the railway company made on May 15, 1919, enters into a determination of the liability or nonliability of the railway company for the damage complained of by the pueblo.

The lower court. in construing the agreement between the parties made on May 15, 1919, expressed the view that the railway company might become actionable after dam-

age ensued because of negilgence in properly maintaining the works already constructed, but the railway company is not liable under the facts presented by this case because the damage was not due to the fault of the railway company.

In this conclusion and judgment we agree. The judgment of the lower court is therefore affirmed, and the cause remanded. It is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and BICKLEY, JJ., concur.